We will hear argument next in No. 24-1322, MemoryWeb v. Samsung. Thank you. Good morning, Your Honors. May it please the Court. Andrew O. Christensen on behalf of Appellant MemoryWeb. The Board's final written decision, finding claims 1-34 of the 823 patent unpatentable is obvious, should be reversed or at least vacated and remanded for two reasons. First, the Board erred in finding that the prior art meets the Locations View requirement under MemoryWeb's claim construction for responsive to. And second, while the Court declined to resolve the claim construction dispute for responsive to, this Court can construe the term on appeal and by adopting MemoryWeb's claim construction, reverse the decision. And which of the two responsive to constructions is the one that is in dispute here? Our claim construction in this case is that responsive to requires a direct cause-effect relationship between, in this particular limitation, the second... So this isn't the static material is not part of responsive to? That's correct, Your Honor. It's the direct causation. So I'd like to start with the first issue in the Board's findings regarding the prior art. As the Board correctly recognized, this case turns on which view is displayed in response to selecting the Places tab described in POG. And specifically, whether selecting that Places tab can lead directly to the iPhoto browser view, which Samsung mapped as the claim Locations View. On this critical issue, the Board did not find that that behavior is expressly disclosed in the prior art. The Board did not find that that behavior was obvious in view of the prior art. Instead, this is on page 75 of the appendix, the Board found, based on testimony from Samsung's expert to fill in the gaps, the Board found that a person of ordinary skill in the art would understand an iPhoto as described by POG, that was the primary reference in the petition, and corroborated by angst, that was the secondary reference, that that transition from selecting the Places tab directly to the browser view was present. This Court's decision in LBT 1 v. Apple, which we've cited in both of our briefs, I think is directly on point and illustrates the Board's error. In that case, the parties disputed whether the prior art discloses a transition between two different modes. There was no express disclosure. The Board, very similar to this case, relied on expert testimony about what a person of skill in the art would understand, and found that a skilled artisan would know that that transition was present. This Court reversed. This Court found that while neither the Board nor the petitioner in that case had expressly invoked the doctrine of inherency, that finding was substantively a finding of inherency. And when viewed under the correct lens, the evidence in that case was insufficient, and the Court reversed. The same here though, isn't it at least Samsung's contention that Pogue does explicitly disclose the limitation at issue? They may be wrong about that, but aren't they at minimum contending that? Well, Your Honor, they contended that Engst, the secondary reference that was not relied upon in the petition, they contended that reference explicitly discloses the behavior. With respect to Pogue, they did not. If you look at Dr. Greenspan's declaration, this is what the Board cited in reaching its decision. They cite paragraphs 17 and 16 of the second declaration. If you look at paragraph 17, it's actually quoted on page 74 of the appendix in the final written decision. There he's describing Pogue. He does not say that this behavior is expressly disclosed in Pogue. He uses the word suggests. So he's pointing to something that doesn't explicitly disclose the behavior, and he's inferring. He's saying, well, it suggests that it could work that way. But he can't point you to where it's explicitly disclosed in Pogue. The same is true in the other paragraph of his declaration that the Board relied on, paragraph 16. So aren't there, I don't know, several different things, not just two. One is a piece of prior art expressly says something. Then on the other hand, in the herency world, it doesn't expressly say something, but it's always there, even though it doesn't express it. But then there's this middle ground of suggests. Why isn't that a basis, A, that it's different from either of the two other things, and it is, in fact, a basis for a fact finder to say, this piece of prior art teaches, teaches or suggests, and maybe even suggestion is part of teaching. But it's not necessarily an inherency thing. A reader, a skilled artisan, would come away understanding from what has been said that there is this other thing not put into explicit words. But that's still not inherency. Right, Your Honor. I think you have to look at this as whether it's a 103 in obviousness argument. Because I think, to your point, if we're operating under an obviousness analysis for a particular element, perhaps you could rely on what it suggests to a person of skill in the art. But Sampson never argued obviousness for this limitation in the petition. It's pages 349 to 350. Certainly, as you know, the word suggest is used in a certain obviousness test. But isn't that, I guess I'm just trying to understand why it should not be the case or why, if you think so, our precedent prevents it from being the case that a fact finder reading a piece of prior art can determine a skilled artisan would understand the following from that prior art. And that's not an inherency point. I think if you're going to rely on an expert telling you what a person of skill in the art would understand from a reference, and assuming we're not operating under a 103 analysis, I think you do have to show that that behavior, whatever they're saying is understood, is necessarily present. That's the LBTIP case versus Apple. We think the facts of this case are very, very similar to this case, with the exception, as Judge Stark pointed out, that they at least conceded in that case there was no explicit disclosure. But in this case, we don't think that's a valid distinction because the board didn't find that there's an express disclosure in the prior art pope, which was relied upon in the petition. And so for those reasons, we think when you look at the board's decision under the proper lens, just like the LBT case, another case, the personal web tech versus Apple case, where it wasn't enough, again, in an obviousness ground in a petition, they were looking at a particular limitation within the obviousness ground and found, look, the fact that it's plausible that the prior art works in a certain way is not sufficient to meet your burden if we're going to look at this under that lens. When you look at the decision in that way, based on what the board found, no express disclosure, no obviousness, there is not substantial evidence to support the board's conclusion. Unless your honors have any questions on the first issue, I'd like to turn now to the second issue, which is our claim construction for responsive to. Because if you find that the board erred in finding the prior art meets our claim construction, the dispute then comes down to whose construction is correct. And this court can construe the term on appeal in the first instance, despite the board's failure to do so, I think for two reasons. One, parties agree that you can do so. Samsung has asked, and it's briefed, that you construe responsive to as an alternative basis for affirmance. And two, the record's been sufficiently developed. The parties briefed this issue extensively in the proceedings before the board and submitted expert testimony, and so we think it's ripe for resolution. Turning to the merits, and I mentioned this earlier, our claim construction requires a direct cause-effect relationship between the second input within the search filter view and displaying the locations view. And I want to address briefly this notion of the intervening inputs, and I want to be clear about this. We've clarified this in our reply brief. There is no negative limitation in our claim construction that prohibits any and all intervening actions or inputs between the claimed input and displaying the view. Our claim construction requires a direct cause-effect relationship. And I think a key— What's the difference between those two things? I think there's an example that Samsung's expert testified about that clearly illustrates the difference, if you'll allow me to go through that example. So he was asked a hypothetical involving three successively displayed views. And he was asked to assume there's a first input in the first view. Let's call that the first event. There's a second input in the second view. Let's call that the second event. And then we'll display the third view. That's the third event. He said a person of skill in the art would understand, of course, the third event you would say is responsive to the second event. Now, he says in his deposition, you wouldn't be wrong if you said the third event is responsive to the first event. But that's not the usual way that a person of ordinary skill in the art would understand those relationships in this context. That's on page 4,887 of the appendix, that deposition testimony. And so what he was saying there was that, sure, there may be a but-for causation relationship between that first input in that first event and that third event. That's not really what we mean by responsive to in the context of these claims. So when we say direct causation, the difference is, it isn't just an indirect but-for, I couldn't get there without something in the past. I think that's consistent with the overall structure of these claims. So this is kind of separate from the locations view. You have a search filter view. You have a first input. You get a people view. You have another input. You get a person view. You have another input. You get a detail view. You, of course, can't get to that detail view unless you've had the first input all the way back in the search filter view. But the claim isn't written in a way that says that that's responsive to the first input in the search filter view. It's responsive to the immediately preceding input. And so that's consistent with our idea that it's direct causation. It's not mere but-for causation. I couldn't get there without some prior input. I see I'm into my rebuttal time. Unless Your Honor has any other questions, I'll reserve the remainder. May it please the Court. I'd like to start by just framing the issues a little bit here because counsel correctly stated that there are two issues in this appeal. But I just want to make sure the Court understands that there are two independent ways the Court can affirm, which is it can either agree with the board's construction from the previous case of responsive to. Or it can agree with the board's factual finding that there is an explicit disclosure of even a direct relationship in the prior issue in this case. And I think the simpler way to resolve this case, assuming you don't reach the issue in the other case, would be to just rest on that factual finding. Because here the board did not expressly construe responsive to, right? That's right. The board did not did not find it necessary. So your first grounds for us to affirm would have us do something the board didn't do. But since claim construction is ultimately a question of law, we can do that. Is that the point? I would call it my second. But yes, that is my point. I think you said it first. Yes. And you know, I think really, you know, we heard it again in the argument here. A lot of the dispute is just about what was being argued and what was being found by the board. On page one of the Gray Brief, the second sentence of the Gray Brief, in fact, is the board did not find that Pope or Angst expressly discloses dislimitation. But that simply isn't true. If we go to Appendix 75, which is the same page that counsel from Emory Webb pointed the court to, it says the weight of the evidence shows that patent owner's argument that the prior art, in particular Pogue, does not disclose dislimitation is incorrect. It goes on to say, based on the evidence of record, a person of ordinary skill would understand that the prior art does not default to showing the world view as patent owner contends, but that selecting the places tab can either directly lead to the locations view or the locations view map. That is a factual finding about what the prior art teaches. That is not a determination about something being inherent in the prior art. And I think it becomes even more clear when you look at the underlying evidence that the board had cited on Appendix 74. And I want to focus on two pieces of that in particular. Namely, there's a citation here to Paragraph 16 of Exhibit 1027, which is at Appendix 4044. That is in Volume 3, I believe. Yeah, Volume 3. This is Dr. Greenspone's testimony. And he says, angst very clearly discloses that selecting places can directly lead to either the map view or the locations view, depending on which of two corresponding buttons was previously selected by the user. Again, at Appendix 3634, which is the deposition testimony that the board cites on Appendix 74. Dr. Greenspone testifies, and I'm looking at a particular page. Does Dr. Greenspone say about Pogue what you just read he said about angst? He did not make the same claim that Pogue explicitly discloses that. So, you know, what happened here is, I think the petition focused on Pogue and then you used angst to sort of corroborate it, but didn't make the assertion specifically about angst explicitly disclosing it. In the panel in response, MemoryWeb attacked Pogue in isolation. And then in the reply, Samsung pointed out that even if you accept their arguments about Pogue, angst explicitly discloses it. Mr. John, what's the second part of the Greenspone testimony you cited? What appendix page? It's at 3634 going on to 35. And it starts sort of at the bottom of 34. Where the answer is, nobody asked me that before, but I think it's actually explicitly disclosed in Exhibit 1006, which is angst, not Pogue. So, there was a dispute below about whether this reply argument was proper. But the board chose to credit the reply argument. And MemoryWeb has not argued on appeal that that was an abuse of discretion. But is the situation that the petition only points to Pogue and only as explicitly disclosing this limitation? I don't think it's quite that sharp. I think the petition points to both of them, but in terms of how it framed the issue, it relied primarily on Pogue. And that doesn't contain an in-hoc verba recitation that angst explicitly discloses this. There was a suggestion, if I understood it correctly, that you didn't argue obviousness or that, which I took to mean maybe that you don't need both Pogue and angst to get this limitation, that you really were only relying on it's explicitly in at least Pogue. I guess you're saying now you don't think you narrowed yourselves in the petition to just Pogue. But why isn't this all calling up the types of problems that your friends on the other side are pointing to? Well, I think we start with the fact that this is a Section 103 grant, right? So we're inherently in obviousness land by the very fact that we cited Section 103 as the basis for our ground of the petition. And then when you combine that with the language from the petition about what Pogue suggests, clearly that's invoking obviousness. And it discusses Pogue and angst together, which are both describing the same prior art system. So I think it really, it requires a level of rigidity to say that somehow this isn't an obviousness case that is just really inconsistent with how obviousness grounds are typically treated, whether from the PTAB or elsewhere. Let me ask you about a statement in their gray brief at page 10. I admittedly, it's got a couple of negatives in it. So I'm misreading it. But they're saying you don't dispute something here towards the bottom of 10. And I just want to understand if they're right about that. SAMSLINK does not dispute that MemoryWeb established that there is at least a plausible interpretation of Pogue and angst in which the interface never, never defaults to the browser view when selecting the Places tab. Are they right in what they're saying? You don't dispute? No, we do dispute that. We think that the interface can default to either the browser view or to the location view. So I think it could be either. It's not correct that... Is there at least a plausible interpretation of those two prior art references that would be contrary to what you think? Our view is no. Obviously, MemoryWeb has a different view. And I don't want to disparage that. But they would be wrong to think that you've conceded this, essentially. That's right. OK. That's correct. And I just... So we have evidence here where our expert testified that this is very clearly disclosed. It's explicitly disclosed in the prior art. The Board says on Appendix 75, we credit this testimony. I don't know how much clearer the Board could have been that it was crediting testimony about an explicit disclosure, therefore finding an explicit disclosure and taking us very far away from inherency. Although I think to Judge Serrano's point earlier, even if you disagreed with it being explicit in the prior art, there isn't always going to be a middle ground in an obviousness analysis where something is suggested to a person of ordinary skill using their background knowledge and ordinary creativity that is fundamentally still a disclosure, which is different from an inherent disclosure, which could be something that they wouldn't even necessarily recognize. You see the pharmaceutical cases where maybe a compound has an inherent property. That can be something that's already inherent in the prior art, even if it would take more than ordinary creativity to recognize it from what's written down the four corners of a  That's really the limited kind of role that inherency plays in an obviousness analysis. It doesn't, it's not this rigid binary where you either have an explicit teaching or you have to go to inherency and there's nothing in between. And I just briefly want to address the non-precedential LBT case. I think that case is very distinguishable and has rather extreme facts where the expert admitted that the alleged feature was only maybe in the prior art or presumably, and that kind of testimony stands in stark contrast to what we have here where the expert says it's very clearly and explicitly disclosed. So just briefly to turn to the other way the court could resolve the case responsive to, I think the fight here is really about the plain meaning because they aren't arguing that there's lexicography or disavowal or anything like that. It's just whether the plain meaning of responsive requires this direct connection. And I think the answer as a matter of ordinary language is no, it doesn't. We could say that the stock market is responsive to consumer sentiment. That doesn't mean that sort of consumer sentiment floats out there and directly changes the numbers on the board. It means that it affects individual trading decisions which then have cumulative effects on the stock market. Similarly, to use opposing counsel's own example of the Google search page where you have to scroll down, I would submit that if you have to click through to page two, those search results on page two are still responsive to the original query because they're all still based on it. They're all still having a logical connection, a logical cause and effect connection from what you search for and what results are being displayed on page two. And that's the same kind of thing you see in the prior art here where if you want to get to figure 24 of Okamura from figure 21, yes, you have to click a couple of times, but it's all part of the same user navigation. And that to me, as a matter of ordinary language, is responsive to. If there are no other questions, I can see the room. Your Honor, I'd like to address three issues in my rebuttal. I agree with what counsel said. I think the dispute in this case is really about what did the board find in the final written decision? And counsel argued that angst expressly discloses this behavior and the board credited Sampson's argument about that. And I don't think the board made that finding in the final written decision. Page 75 of the appendix, the only mention of angst in this finding is that it corroborates POKE. They're not relying on angst in isolation. They're not saying here that it's explicit in angst. That's consistent with how this was argued in the proceedings below. The petition at pages 349 to 350 of the appendix only cited POKE for the location's view limitation. When Sampson came back in its reply and it relied on an express disclosure in angst, we argued in our serve reply to the board that it would be improper for Sampson to change which reference it was relying on. Now, the board didn't expressly address that argument, but I think here on page 75 in the final written decision, by only relying on angst as corroboration as opposed to saying that it's expressly disclosed, I think they recognized that what was in the petition was just POKE and not angst. And so I think the relevant reference you need to look at to see if there's substantial evidence to support this conclusion is POKE. And their expert did not testify that this behavior was expressed in POKE. The second issue I want to touch on is that counsel argued that we're in 103 land. So everything in the petition is viewed through the lens of 103. I don't think that's correct. This petition relied on 103 for two reasons. One, they needed to combine POKE and angst for certain limitations because certain features were not taught in POKE. So they had to bring in a secondary reference. And then if you look at their discussion of the detail view limitation, this is pages 344 to 345 of the appendix in their petition, they have an express obviousness argument about modifying the prior art to meet a claim limitation. And so Samsung knew how to make obviousness arguments within this round of unpatentability. But just because it was framed as a 103 round doesn't give them a license to argue every single contention under the lens of 103 once we point out that there isn't an express disclosure as alleged in the petition. Did the petition, didn't it say suggests for this limitation that POKE suggests it? In the petition, no. They did not say suggest. They pointed to the places tab in POKE and said you click this and this is the view that you get. So where did suggest first come up? I guess I've lost track. In the reply declaration of Samsung's expert, Dr. Greenspan. That was in paragraph 17, that's page 40, 45 of the appendix. That's the first time that that word came up in this proceeding. And then finally, just start to your question, the last point I want to hit on, you had asked some questions about other plausible interpretations of these references. I think there is another plausible interpretation and that forecloses a finding that it's inherent. So even if we look to X, the reference in which they've argued that it's explicit, and we look at what Dr. Greenspan cited. He cited something on page 1564 of the appendix. Specifically, there's text on that page that says click places in the source pane. And if necessary, click the world view button in the view control in the toolbar. And so from there, they've inferred, well, because it says if necessary, well, you may have to click the world button. So that means it must be defaulting at some point to the browser view. I think what's more interesting is the text on the next page of the appendix, 1565, which they don't address. There, they're describing actually the browser view, the relevant view for the locations view. There is no if necessary qualifier there. It says to get there, you click places, and then you click the browser button to be able to get there. So we think there's at least a plausible interpretation of this prior art. It's not necessarily true that it defaults in the way that Samson suggested. And because it does not, there is not substantial evidence for the board's conclusion. Unless your honors have any other questions, we ask that you reverse or remand the decision.  Thank you. Thanks to all counsel. The case is submitted. And that concludes our business for the day.